UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JENNIFER BRADLEY,                    :

                    Plaintiff,       :    12 Civ. 7300 (ER)(HBP)

    -against-                        :    REPORT AND
                                          RECOMMENDATION
COMMISSIONER OF SOCIAL SECURITY,     :

                    Defendant.       :

----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE EDGARDO RAMOS, United States District

Judge,

I.  Introduction

          Plaintiff Jennifer Bradley brings this action pro se

pursuant to section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), seeking judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her

applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  The Commissioner has moved

for a judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure (Docket Items 19).  Plaintiff

has submitted an affirmation in opposition to the Commissioner's

motion (Docket Item 21).

For the reasons set forth below, I respectfully recommend that the Commissioner's motion for judgment on the pleadings be granted.

II.  <u>Facts</u>

A.  <u>Procedural Background</u>

Plaintiff filed an application for DIB on September 1, 2009, in which she alleged she had been disabled since November 2, 2005 (Tr.[1] 100-01).  On October 16, 2009, plaintiff filed an application for SSI, alleging she had been disabled since February 1, 2008 (Tr. 102-07).  Plaintiff claimed she was disabled as a result of a stroke and poor eyesight (Tr. 68).  Plaintiff was previously found to be disabled beginning November 1, 2005 and received benefits until January 2008 when she was found to be "no longer disabled" (Tr. 110).  Hence, the present action addresses only plaintiff's applications for DIB and SSI from February 1, 2008 onward (Tr. 9, 102).

The Commissioner denied both applications on November 25, 2009 (Tr. 63-68).  Plaintiff requested a hearing on January 5, 2010, alleging disability from hypertension, multiple sclero-

---

[1]"Tr." refers to the administrative record that the Commissioner filed, as required by 42 U.S.C. § 405(g) (Docket Item 14).

sis, numbness from stroke, high cholesterol, leg pains and poor eyesight (Tr. 69).  The request was granted and a hearing was held on January 3, 2011 before Administrative Law Judge ("ALJ") Seth I. Grossman (Tr. 19-59).  At the hearing, the ALJ advised plaintiff of her right to have an attorney present and plaintiff chose to continue the hearing without legal representation (Tr. 24-28).  A vocational expert, Raymond Edward Cestar, was also present at the hearing (Tr. 21).  In a decision dated January 14, 2011, the ALJ determined that plaintiff was not disabled (Tr. 9-15).  The ALJ's determination became the Commissioner's final decision on August 14, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

On September 28, 2012, plaintiff filed the instant complaint pro se (Docket Item 2).  The Commissioner filed its motion for a judgment on the pleadings on July 12, 2013 (Docket Item 19) and plaintiff filed her affirmation in opposition to the motion on July 24, 2013 (Docket Item 21).

B.  Plaintiff's Employment
    and Medical Record

Plaintiff was born on January 31, 1961 (Tr. 108).  She received a High School diploma and completed one year at Hostos Community College (Tr. 178, 269).  Thereafter, plaintiff worked

3

in various positions, including as a cashier, dishwasher, tele-
marketer and salesperson (Tr. 134, 264).  The record reflects
that plaintiff worked as a telemarketer from 1997 to 1999 (Tr.
151), in or around 2002 (Tr. 38-39) and from September 2004 to
April 2005 (Tr. 264).

The medical evidence in the record dates from December
1, 2005, when plaintiff was hospitalized at the Bronx-Lebanon
Hospital Center ("Bronx-Lebanon") alleging right-sided weakness,
blurry vision in the right eye and difficulty walking (Tr. 375).
Following a neurology work-up and a physical examination, plain-
tiff was diagnosed with cerebral vascular accident ("CVA"),
"questionable hypertension" and cerebral autosomal dominant
arteriopathy with sub-cortical infarcts and leukoencephalopathy
("CADASIL") disease[2] and discharged on December 9, 2005 (Tr. 170,
375; see 227-30).  Plaintiff was re-admitted days after, alleging
right-sided facial numbness, with associated symptoms of slurred
speech and right-sided weakness (Tr. 169-70, 373).  Following a
physical examination and additional testing, she was found to be

---

[2]"CADASIL . . . is an inherited form of cerebrovascular
disease that occurs when the thickening of blood vessel walls
blocks the flow of blood to the brain.  The disease primarily
affects small blood vessels in the white matter of the brain."
See National Institute of Neurological Disorders and Stroke, part
of the National Institutes of Health, available at
http://www.ninds.nih.gov/disorders/cadasil/CADASIL.htm (visited
7/16/14).

4

in stable condition, alert and oriented (Tr. 170); she was discharged on December 17, 2005 and advised to follow up with a neurologist (Tr. 170).

The medical record contains a biophysical summary report ("BPS") from the Federation Employment and Guidance Service ("FEGS") that was prepared from December 2005 to May 2006 (Tr. 175-90).  Plaintiff reported that she had last worked at Au Bon Pain in 2005 (Tr. 179).  Plaintiff denied having any mental impairments (Tr. 180).

On February 22, 2006, plaintiff visited Bronx-Lebanon to meet with her primary physician, Dr. Russell Perry (Tr. 231-32).  Dr. Perry's notes indicate that plaintiff would receive treatment for CADASIL and that an MRI suggested plaintiff may have multiple sclerosis (Tr. 231-32).  Under "Functional Capacity," Dr. Perry checked off the box indicating that plaintiff would be unable to work for at least twelve months (Tr. 232).  In June and July 2006, plaintiff received physical and speech therapy at The Center for Rehabilitation (Tr. 409-12).

More than two years later, on December 17, 2008, a magnetic resonance image ("MRI") was taken of plaintiff's brain (Tr. 312).  The study showed limited areas of hyperintensity compatible with ischemic change or demyelination and possible left cerebellar infarct (Tr. 312).  Neurologist Dr. Rene Elkin

examined plaintiff on February 11, 2009 (Tr. 372).  Dr. Elkin
noted plaintiff's history of an acute stroke and that "[n]umerous
tests ha[d] failed to confirm any diagnosis other than vascular
disease likely on the basis of hypertension" (Tr. 372).  She
further stated that plaintiff's December 17, 2008 MRI had "re-
veal[ed] significant improvement with regard to the areas of
hyper intensity" (Tr. 372).  Dr. Elkin concluded that plaintiff's
"neurological physical examination [was] normal," that there was
no evidence to confirm the diagnosis of multiple sclerosis and
that she was asymptomatic (Tr. 372).  Plaintiff was assured that
no further treatment would be necessary, other than blood pres-
sure control and general health maintenance (Tr. 372).

          According to a FEGS BPS report prepared by Dr. Cindy
Grubin on August 27, 2009, plaintiff reported that she could
travel independently with limitations, due to pain in her right
leg; plaintiff also stated she could wash dishes, watch TV, cook
meals, read, socialize, dress herself, bathe and use the toilet,
but had difficulty washing her clothes and cleaning her house
(Tr. 199).  Dr. Grubin found that plaintiff had the following
abnormalities:  abnormal digits, head/neck, spine, ribs, pelvis,
left upper and left lower extremity; elevated blood pressure;
joint swelling, tenderness and edema; range of motion restric-
tions; contractures; memory and speech limitations; abnormal

6

cranial nerves, and decreased sensation on the right side (Tr.
204).  She further observed that plaintiff was not alert, was
easily distracted and ambulated with a cane for assistance (Tr.
204).  Dr. Grubin concluded that plaintiff was unable to use
public transportation, needed para-transit services to travel,
and that plaintiff had substantial functional limitations on her
ability to work that would last for at least twelve months and
that rendered plaintiff unable to work (Tr. 207).  In a section
entitled "Brief Comments Supporting Employment Disposition," Dr.
Grubin wrote "Med cond prohibit employment.  SSI" (Tr. 207).

X-rays of plaintiff's right leg and foot taken on
September 2, 2009 showed no fractures, moderate narrowing of the
medical joint space of the knee, an enthesophyte[3] at the inser-
tion of the quadriceps tendon, a lateral patella lift, joint
findings in the foot suggestive of hammertoe and two phalanges[4]
in the fourth and fifth right toes (Tr. 379-81).

---

[3]"An enthesophyte is a bony spur forming at a ligament or
tendon insertion into bone, growing in the direction of the
natural pull of the ligament or tendon involved."  Juliet Rogers
et al., Bone Formers: Osteophyte and Enthesophyte Formation are
Positively Associated 89 (1997), available at
http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1752321/pdf/v056p0008
5.pdf (visited July 30, 2014).

[4]Phalanges refer to any "one of the long bones of the dig-
its, 14 in number for each hand or foot, two for the thumb or
great toe, and three each for the other four digits."  Stedman's
Medical Dictionary (27th ed. 2000).

Subsequently, Dr. William Lathan performed a consulta-
tive examination on October 23, 2009 (Tr. 389-93).  Plaintiff
informed Dr. Latham that after her discharge from Bronx-Lebanon
in 2005, she had some residual numbness on the right of her face
and speech difficulties.  Dr. Latham noted that while plaintiff
continued to complain about the numbness, she did not allege any
lingering difficulties concerning her speech; he also observed
that her speech sounded "normal" during the interview (Tr. 389).
Furthermore, plaintiff informed Dr. Latham that she was able to
perform all activities involving personal care (Tr. 389).

Plaintiff's physical examination results were normal
(Tr. 390).  Dr. Latham observed that plaintiff was able to walk
without difficulty and without the use of assistive devices, she
was able to get on and off the exam table without assistance and
could rise from her chair without difficulty (Tr. 390).  She had
full range of motion and full strength in the upper and lower
extremities, as well as in her hands and fingers; her joints were
stable and non-tender and she had no motor or sensory deficits
(Tr. 391).  Dr. Latham noted a history of hypertension and CVA
(Tr. 391).  He indicated that plaintiff had a "[m]oderate re-
striction for strenuous exertion" (Tr. 391).

Dr. Russell Perry[5] prepared a Medical Source Statement
of Ability to do Work-Related Activities (Physical) on February
18, 2010 (Tr. 401-08).  On it, he indicated that plaintiff could:
lift and carry up to ten pounds frequently and up to twenty
pounds occasionally; sit for five hours, stand for three hours
and walk for one hour at one time without interruption, and sit
for seven hours, stand for five hours and walk for one hour
throughout an eight-hour work day (Tr. 402).  He found that
plaintiff did not require the use of a cane to ambulate (Tr. 402)
and observed that plaintiff arrived at the appointment alone,
without a cane and was appropriately "groomed/dressed" (Tr. 406).
He described plaintiff's status as "post-CVA (2005)" and noted
the continuing pain in her right leg[6] (Tr. 402).

A physical examination of plaintiff's upper extremities
revealed they were "essentially normal"; specifically, with
respect to plaintiff's ability to use her hands, Dr. Perry noted
that plaintiff could reach and push/pull with both hands fre-
quently and could perform the activities of "handling," "finger-
ing" and "feeling" with both hands continuously (Tr. 403).

----

[5]Dr. Russell Perry treated plaintiff regularly from January
2009 to December 2010 (Tr. 51, 413).

[6]Dr. Perry also crossed out as erroneous each notation that
indicated plaintiff had a history of multiple sclerosis (Tr. 402,
403, 405).

However, Dr. Perry assessed that plaintiff could never stoop, kneel, crouch or crawl and would have difficulty climbing or descending stairs; additionally, plaintiff could not tolerate conditions that would require her to move mechanical parts or operate a motor vehicle or would expose her to heights, dust, odors and other pulmonary irritants or extreme cold or heat, although she could occasionally tolerate humid environments, moderate noise and vibrations (Tr. 405).  In addition, Dr. Perry noted that plaintiff could use a telephone to communicate (Tr. 404) and that her vision impairments posed no issues for a workplace, other than requiring corrective lenses to read very small print (Tr. 404).  He found that plaintiff could perform numerous activities, including shopping, traveling alone, could ambulate without a cane or other assistance, use public transpor-tation, climb a few steps at a reasonable pace, prepare a simple meal for herself, care for her personal hygiene and handle paper files (Tr. 406).

C.  <u>Testimonial Evidence</u>

At the hearing before the ALJ on January 3, 2011, plaintiff testified that she could "barely walk" due to pain in her legs (Tr. 51; <u>see</u> Tr. 36, 40, 45).  She also complained of numbness on the right side of her face, high blood pressure and

high cholesterol (Tr. 40, 50-51).  Plaintiff testified that in or around 2002, she worked for a telemarketing company; she had performed her job sitting down the "whole time," did not have to lift anything and had to fill out forms (Tr. 39, 43-44).  She testified that she could no longer carry out the duties of a telemarketer because of speech and writing impairments (Tr. 40, 46); specifically, plaintiff testified that she slurs her words and that her handwriting is illegible (Tr. 40, 44).  The ALJ observed that she was able to speak without difficulty at the hearing and to write her name five times, and that plaintiff's speech and writing appeared "fine" (Tr. 41-43, 46).  Plaintiff also stated that could not perform her past work because she had difficulties walking to the train (Tr. 47), although the ALJ informed plaintiff that her ability to commute to her prior job was not the focus of his inquiry (Tr. 47).

The vocational expert testified that plaintiff's past work as a telemarketer constituted sedentary work and had a specific vocational preparation ("SVP") time of three[7] (Tr. 53-

---

[7]     SVP . . . refers to the amount of time it takes an individual to learn to do a given job.  Jeffrey Scott Wolfe & Lisa B. Proszek, Social Security Disability and the Legal Profession 163 (2002).  SVP uses a scale from 1 to 9 and the higher the SVP number the greater the skill required to do the job.  Id.  An SVP level of 3 means that it could take more than 30 days and up to
(continued...)

57).  He opined that if plaintiff could perform sedentary work, then she would be able to fulfill the duties of a telemarketer (Tr. 54-56).

## III.  Analysis

### A.  Applicable Legal Principles

#### 1.   Standard of Review

The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard.  42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it

---

[7](...continued)
three months to learn the job, and is associated with semiskilled work.

Urena-Perez v. Astrue, 06 Civ. 2589 (JGK)(MHD), 2009 WL 1726217 at *20 n.43 (S.D.N.Y. Jan. 6, 2009) (Dolinger, M.J.) (Report and Recommendation), adopted at and modified on other grounds, 2009 WL 176212 (S.D.N.Y. June 18, 2009) (Koeltl, D.J.).

determine whether the Commissioner's conclusions were supported by substantial evidence. Tejada v. Apfel, supra, 167 F.3d at 773-74; Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Ellington v. Astrue, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2009) (Marrero, D.J.). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." Ellington v. Astrue, supra, 641 F. Supp. 2d at 328; accord Johnson v. Bowen, supra, 817 F.2d at 986. However, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, supra, 817 F.2d at 986.

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). "Consequently, where [there is] substantial evidence . . . this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon de novo review." Beres v. Chater, 93 Civ. 5279 (JG), 1996 WL 1088924 at *5 (E.D.N.Y. May 22, 1996); see Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Thus, "'[t]o determine on appeal whether an

ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Terwilliger v. Comm'r of Soc. Sec., No. 3:06-CV-0149 (FJS/GHL), 2009 WL 2611267 at *2 (N.D.N.Y. Aug. 24, 2009), quoting Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

A remand is appropriate "'[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996), quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) and Hankerson v. Harris, 636 F.2d 893, 896 (2d Cir. 1980). "Reversal and entry of judgment for the claimant is appropriate only 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" Cruz ex rel. Vega v. Barnhart, 04 Civ. 9794 (DLC), 2005 WL 2010152 at *8 (S.D.N.Y. Aug. 23, 2005) (Cote, D.J.), modified on other grounds on reconsideration, 2006 WL 547681 (S.D.N.Y. Mar. 7, 2006), quoting Parker v. Harris, supra, 626 F.2d at 235; accord Rivera v. Sullivan, 923 F.2d 964, 970 (2d Cir. 1991); Babcock v. Barnhart, 412 F. Supp. 2d 274, 284 (W.D.N.Y. 2006); Buonviaggio v. Barnhart, 04 Civ. 357 (JG), 2005 WL 3388606 at *5 (E.D.N.Y. Dec. 2, 2005); Rivera v. Barnhart, 379 F. Supp. 2d 599,

14

604 (S.D.N.Y. 2005) (Marrero, D.J.); see 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

> 2.   Determination of
>      Disability

A claimant is entitled to disability benefits if he or she can establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months).  The impairment must be demonstrated by "medically acceptable clinical or laboratory diagnostic techniques," 42 U.S.C. § 423(d)(5)(A), and it must be

> of such severity that [the claimant] is not only unable
> to do [the claimant's] previous work but cannot, con-
> sidering [the claimant's] age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which [the claimant] lives, or whether a spe-
> cific job vacancy exists for [the claimant], or whether

> [the claimant] would be hired if [the claimant] applied
> for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner must consider both objective and subjective factors when assessing a disability claim, including: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant and family or others testify and (4) the claimant's educational background, age and work experience.  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); DiPalma v. Colvin, 951 F. Supp. 2d 555, 565 (S.D.N.Y. 2013) (Peck, M.J.).

"In evaluating disability claims, the [Commissioner] is required to use a five-step sequence, promulgated in 20 C.F.R. §§ 404.1520, 416.920."  Bush v. Shalala, 94 F.3d 40, 44 (2d Cir. 1996).

> First, the Commissioner considers whether the claimant
> is currently engaged in substantial gainful activity.
> Where . . . the claimant is not so engaged, the Commis-
> sioner next considers whether the claimant has a "se-
> vere impairment" that significantly limits his physical
> or mental ability to do basic work activities . . . .
> Where the claimant does suffer a severe impairment, the
> third inquiry is whether, based solely on medical
> evidence, he has an impairment listed in Appendix 1 of
> the regulations or equal to an impairment listed there
> . . . .  If a claimant has a listed impairment, the
> Commissioner considers him disabled.  Where a claimant
> does not have a listed impairment, the fourth inquiry
> is whether, despite his severe impairment, the claimant

> has the residual functional capacity to perform his
> past work . . . . Finally, where the claimant is
> unable to perform his past work, the Commissioner then
> determines whether there is other work which the claim-
> ant could perform.

Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); see also

Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Butts v. Barnhart,

388 F.3d 377, 383 (2d Cir. 2004), amended in part on other

grounds on rehearing, 416 F.3d 101 (2d Cir. 2005).

Step four requires that the ALJ make a determination as

to the claimant's residual functional capacity ("RFC"). See Rosa

v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). RFC is defined in

the applicable regulations as "the most [the claimant] can still

do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To

determine RFC, the ALJ makes a "function by function assessment

of the claimant's ability to sit, stand, walk, lift, carry, push,

pull, reach, handle, stoop, or crouch . . . ." Sobolewski v.

Apfel, 985 F. Supp. 300, 308-09 (E.D.N.Y. 1997). The results of

this assessment determine the claimant's ability to perform the

exertional demands of sustained work, and may be categorized as

sedentary,[8] light, medium, heavy, or very heavy. 20 C.F.R.

---

[8]     Sedentary work involves lifting no more than 10 pounds
        at a time and occasionally lifting or carrying articles
        like docket files, ledgers, and small tools. Although
        a sedentary job is defined as one which involves sit-
        ting, a certain amount of walking and standing is often
                                            (continued...)

§ 404.1567; see Rodriquez v. Apfel, 96 Civ. 8330 (JGK), 1998 WL

150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).

In addition, "[p]ursuant to both case law and Social

Security Ruling [("SSR")] 82-62, [available at 1982 WL 31386

(1982),] in order to determine at step four whether a claimant is

able to perform her past work, the ALJ must make a specific and

substantial inquiry into the relevant physical and mental demands

associated with the claimant's past work, and compare these

demands to the claimant's residual capabilities." Kerulo v.

Apfel, 98 Civ. 7315, 1999 WL 813350 at *8 (S.D.N.Y. Oct. 7, 1999)

(Mukasey, D.J.) (citations omitted); accord Snitzer v. Astrue, 09

Civ. 2705 (CBA), 2011 WL 1322274 at *10 (E.D.N.Y. Mar. 31, 2011);

Melillo v. Astrue, No. 7:06-CV-0698 (LEK/DEP), 2009 WL 1559825 at

*21 (N.D.N.Y. June 3, 2009).  In other words,

> [o]nce the demands of the claimant's past relevant work
> are ascertained, the ALJ "must . . . identify the
> [claimant's] ability to perform the specific work-
> related abilities on a function-by-function basis."
> [SSR] 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996).
> Specifically, "the adjudicator must discuss the indi-
> vidual's ability to perform sustained work activities
> in an ordinary work setting on a regular and continuing
> basis (i.e., 8 hours a day, for 5 days a week, or an

---

[8](...continued)
necessary in carrying out job duties.  Jobs are seden-
tary if walking and standing are required occasionally
and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

equivalent work schedule), and describe the maximum
amount of each work-related activity the individual can
perform based on the evidence available in the case
record." <u>Id</u>. at *7.

<u>Selmo v. Barnhart</u>, No. 01 Civ. 7374 (SHS), 2002 WL 31445020 at *9
(S.D.N.Y. Oct. 31, 2002) (Stein, D.J.); <u>accord</u> <u>Metejka v.</u>
<u>Barnhart</u>, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005).

"Past relevant work" is defined as work that was
performed "<u>within</u> <u>the</u> <u>last</u> <u>15</u> <u>years</u>, lasted long enough for
[claimant] to learn to do it, and <u>was</u> <u>substantial</u> <u>gainful</u> <u>activ-
ity</u>." <u>Melville v. Apfel</u>, 198 F.3d 45, 53 (2d Cir. 1999) (empha-
sis in original), <u>quoting</u> SSR 82-62, <u>available</u> <u>at</u> 1982 WL 31386
at *1 (1982). "[W]ork is to be considered substantial if it
involves doing significant physical or mental activities, 20
C.F.R. § 416.972(a), and is to be considered gainful if it is the
kind of work usually done for pay or profit, whether or not a
profit is realized, <u>id</u>. § 416.972(b)." <u>Melville v. Apfel</u>, <u>supra</u>,
198 F.3d at 53 (inner quotation marks omitted). In other words,
"a proper assessment of whether past work was substantial gainful
activity requires evaluation of, <u>inter</u> <u>alia</u>, how well the claim-
ant performed her duties, whether those duties were minimal and
made little or no demand on her, what her work was worth to the
employer, and whether her income was tied to her productivity."
<u>Melville v. Apfel</u>, <u>supra</u>, 198 F.3d at 54.

19

The claimant bears the initial burden of proving disability with respect to the first four steps.  Burgess v. Astrue, supra, 537 F.3d at 128; Balsamo v. Chater, supra, 142 F.3d at 80.  At the fourth step, "a claimant must demonstrate that her RFC was such that she was unable to perform her work either as she had actually performed it in the past or as that job function is usually performed."  Shatraw v. Astrue, No. 7:04-CV-0510 (NAM/RFT), 2008 WL 4517811 at *17 (N.D.N.Y. Sept. 30, 2008), citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).  Once the claimant has satisfied this burden, the burden shifts to the Commissioner to prove the final step -- that the claimant's RFC allows the claimant to perform some work other than the claimant's past work.  Butts v. Barnhart, supra, 388 F.3d at 383; Balsamo v. Chater, supra, 142 F.3d at 80.

Finally, when considering the evidence in the record, the ALJ is required to give deference to the opinions of the claimant's treating physicians.  Under the regulations' "treating physician rule," a treating physician's opinion will be given controlling weight if it is "well-supported by medically accept-able clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Shaw v. Chater, supra, 221 F.3d at 134; Diaz v. Shalala, 59 F.3d 307, 313

20

n.6 (2d Cir. 1995); Schisler v. Sullivan, 3 F.3d 563, 567 (2d
Cir. 1993).

    B.  Analysis of the
        ALJ's Decision

        The Commissioner argues that "substantial evidence of
record supports the Commissioner's decision that plaintiff failed
to demonstrate that she was disabled during the period in issue"
(Memorandum of Law in Support of the Commissioner's Motion for
Judgment on the Pleadings, filed on December 20, 2013 (Docket
Item 26) at 1).  Plaintiff does not indicate in her opposition to
the Commissioner's motion that she objects to any specific
aspects of the ALJ's decision, nor does she cite any putative
legal error.  Rather, she states that she is "presently being
treated for hypertension" and that "the motion should be denied
because [she is] unable to lift 20+ pds as stated by Dr. Perry
[and is] unable to walk continuously without stopping" (Plain-
tiff's Affirmation in Opposition to Motion, dated July 24, 2013
(Docket Item 21) ("Pl. Affirm.") at 1).  Plaintiff attaches a
document from Bronx-Lebanon, which lists her medications as of
May 6, 2013 (Pl. Affirm. at 2).  In light of plaintiff's pro se
status, I shall consider each of the steps in the ALJ's analysis
that supported the conclusion that plaintiff was not disabled.

21

The ALJ first properly noted that plaintiff met the disability insured status requirements through December 31, 2012 (Tr. 11). The ALJ then applied the five-step analysis described above. At the first two steps, he determined that, based on the medical and testimonial evidence, plaintiff had not engaged in substantial gainful activity since February 1, 2008, the alleged onset date (Tr. 11), and plaintiff suffered from the following severe impairments: (1) status post-stroke and (2) hypertension (Tr. 11). Indeed, plaintiff stated she had stopped working in November 2005 (Tr. 133) and that the residual effects of her stroke, in addition to the hypertension, were severe (Tr. 204, 372, 375, 391, 405). Hence, there was substantial evidence in the record to support the foregoing findings.

Although he found that plaintiff suffered from severe impairments, the ALJ next concluded that plaintiff's impairments, either singly or in combination, were not medically equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 12). Specifically, he found that they did not meet or medically equal any of the neurological listings because the residual effects of her stroke were mild according to the reports by her treating physicians (Tr. 12). The ALJ's determination at this step of the analysis was also supported by substantial evidence.

Section 11.00 lists neurological disorders, including central nervous system vascular accident (stroke) and multiple sclerosis.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.04, 11.09. Pursuant to Section 11.04, in order to meet the impairments set forth therein, a neurological disorder resulting from a stroke must present one of the following symptoms more than three months post-vascular accident:  (1) speech or motor aphasia resulting in ineffective speech or (2) significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04.  Substantial evidence in the record supports the ALJ's finding that plaintiff suffered from neither symptom during the relevant time period.  An MRI taken on December 2008 of plaintiff's brain revealed "significant improvement with regard to the areas of hyper intensity" and led Dr. Elkin to conclude in February 2009 that plaintiff was asymptomatic (Tr. 372).  Following a consultative examination in October 2009, Dr. Latham observed that plaintiff's speech sounded "normal" and that she was able to walk without difficulty and without assistive devices (Tr. 389, 390).  In addition, in February 2010, plaintiff's treating physician, Dr. Perry, noted that, although plaintiff had continuing pain in her right leg, she could walk without assistive devices (Tr. 402).  Moreover, to the extent

23

plaintiff alleges that she suffers from multiple sclerosis, the record shows that her neurologist, Dr. Elkin, concluded there was no evidence to confirm that diagnosis (Tr. 372) and Dr. Perry indicated that that diagnosis had been an error (Tr. 402, 403, 405).

Further, to the extent plaintiff claims that the ALJ should have found that hypertension meets or medically equals a listed impairment, that argument is also unpersuasive. Pursuant to Section 104.00(F)(2), "hypertension (high blood pressure) generally causes disability through its effects on other body systems [and, thus, shall be] evaluate[d] by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 104.00(F)(2). However, there is no evidence in the record that plaintiff's hypertension effected or impaired other bodily systems during the period in question. Accordingly, there is no basis to disturb the ALJ's finding that plaintiff's severe impairments did not meet any of the listings in Appendix I.

The ALJ then determined that plaintiff retained the residual functional capacity to perform the full range of sedentary work (Tr. 12).

> [W]hile an ALJ "is required to take the claimant's reports of pain and other limitations into account, 20 C.F.R. § 416.929," he or she is "not require[d] to

24

accept the claimant's subjective complaints without question," <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." <u>Id</u>. This requires a two-step process. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." <u>Id</u>. If so, the ALJ must then consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." <u>Id</u>. (internal quotation marks omitted; alteration in <u>Genier</u>). For purposes of our review, however, we have long held that "[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant." <u>Carroll v. Sec'y of Health & Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983).

<u>Campbell v. Astrue</u>, 465 F. App'x 4, 7 (2d Cir. Jan. 6, 2012).

Here, the ALJ, applying the above legal standard, determined that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleges, her complaints concerning the intensity, persistence and limiting effects of the symptoms were "not credible" to the extent they were inconsistent with the above RFC assessment (Tr. 12). I find that the ALJ was well within his discretion in not "credit[ing] [plaintiff's] testimony about the severity of her pain and the functional limitations it caused," <u>Rivers v. Astrue</u>, 280 F. App'x 20, 22 (2d Cir. 2008) and the assessment was made "in light of medical findings and other evidence." <u>Mimms v. Heckler</u>, 750 F.2d 180, 186 (2d Cir. 1984).

The ALJ summarized plaintiff's complaints, including
her allegations concerning pain in her right leg, her inability
to walk, sit or stand, for long periods of time, her inability to
lift or carry heavy items, her difficulties concentrating,
remembering and being attentive, her difficulty conversing due to
a speech impairment, as well as her difficulty with managing
stress (Tr. 12-13).  The ALJ also summarized the medical record,
starting with plaintiff's hospitalization at Bronx-Lebanon from
December 1 to December 9, 2005 for a stroke, questionable hyper-
tension and CADASIL disease (Tr. 13).  He noted that plaintiff
had been subsequently hospitalized again for right-side facial
numbness with slurred speech, right-side weakness, blurry vision
in the right eye and difficulty walking, and was discharged on
December 17, 2005 (Tr. 13).  He considered the fact that in June
and July 2006, plaintiff received physical and speech therapy
(Tr. 13).  The ALJ noted that plaintiff had received disability
benefits until January 2008 (Tr. 13).

Importantly, the ALJ noted that the medical records did
not show any medical treatment during the relevant time period
until February 2009, although plaintiff continued to take medica-
tion (Tr. 13).  The ALJ summarized the medical records from Dr.
Elkin in February 2009, Dr. Perry in February 2010 (to which he
attributed significant weight), Dr. Lathan in October 2009 and

26

the FEGS medical team in August 2009 (to which he attributed little weight) (Tr. 14).  Because both Dr. Elkin and Dr. Perry had found plaintiff to be asymptomatic, the ALJ concluded that plaintiff was capable of performing the full range of sedentary work (Tr. 14).

The ALJ's assessment of plaintiff's RFC is supported by the finding of Dr. Perry, plaintiff's treating physician. Specifically, consistent with the ALJ's finding, Dr. Perry found that in February 2010 plaintiff could carry up to ten pounds frequently, could walk for one hour throughout an eight-hour workday and could walk without a cane or assistance (Tr. 402). The ALJ's conclusion is also supported by other evidence in the record, namely Dr. Elkin's statement that plaintiff was asymptomatic (Tr. 372) and Dr. Lathan's statements that plaintiff could perform all activities of personal care and could walk without difficulty and without assistive devices (Tr. 389-90).  In light of Dr. Perry's status as plaintiff's treating physician as well as the substantial evidence in support of his opinions in the record, the ALJ appropriately assigned controlling weight to Dr. Perry's findings, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and his credibility findings were supported by substantial evidence. See Rivers v. Astrue, supra, 260 F. App'x at 22.

27

Further, in finding that plaintiff could perform the
full range of sedentary work, the ALJ accorded little weight to
Dr. Grubin's opinion that plaintiff had substantial functional
limitations that rendered her unable to work (Tr. 204).  The ALJ
found that Dr. Grubin's assessment was inconsistent with the rest
of the medical record, particularly the opinions of Dr. Perry.
Because Dr. Grubin was not plaintiff's treating physician and her
opinions were inconsistent with the opinions of plaintiff's
treating physician, the ALJ was justified in according little
weight to Dr. Grubin's findings, pursuant to 20 C.F.R. §§
404.1527(c)(2), 416.927(c)(2).[9]

Accordingly, the ALJ's RFC determination was supported
by substantial evidence.

At step four of the analysis, the ALJ relied on his
assessment of plaintiff's RFC and testimonial evidence from the
hearing to conclude that plaintiff was able to perform her past

---

[9]In her opposition to the Commissioner's motion, plaintiff
contends that she is unable to lift "20+" pounds and walk contin-
uously without stopping (Pl. Affirm. at 1).  To the extent
plaintiff's intends these statements to challenge the ALJ's RFC
assessment, this argument lacks merit because sedentary work does
not involve lifting 20+ pounds and also does not involve walking
continuously.  See 20 C.F.R. § 404.1567(a) (sedentary work
involves lifting no more than 10 pounds); McIntyre v. Colvin, 13-
2886, --- F.3d ---, 2014 WL 3030378 at *5 (2d Cir. July 7, 2014)
("'[S]edentary work' is generally defined as work in a sitting
position for six hours of an eight-hour workday.  See SSR 96-9p,
61 Fed. Reg. 34478, 34480 (July 2, 1996)").

relevant work as a telemarketer and was, therefore, not disabled (Tr. 14). Specifically, plaintiff had testified that her past relevant work as a telemarketer had involved mostly sitting and no lifting (Tr. 14). She had also testified that she could no longer perform the duties of a telemarketer because she had speech and writing impairments and had difficulty traveling to work, as a result of the stroke (Tr. 40, 47). However, the ALJ observed that, consistent with Dr. Lathan and Dr. Elkin's opinions, plaintiff had "little, if any, discernible speech difficulties" during the hearing (Tr. 15) and, upon inspecting plaintiff write her name five times, he remarked that her writing appeared fine as well (Tr. 41-43, 46). The ALJ also rejected plaintiff's concern regarding her inability to commute to work because it did not enter into his analysis of plaintiff's ability to perform past relevant work (Tr. 47).

Past relevant work is defined as work that was performed "within the past 15 years, lasted long enough for [claimant] to learn to do it" and that was "substantial gainful activity." Melville v. Apfel, supra, 198 F.3d at 53 (emphasis in original). The record shows that plaintiff performed her past work as a telemarketer within the past fifteen years (Tr. 38-39, 151, 264). Moreover, the vocational expert determined that plaintiff's past work had an SVP level of three (Tr. 15), meaning

that it could take an individual "up to three months to learn the job."  <u>See</u> <u>Urena-Perez v. Astrue</u>, <u>supra</u>, 2009 WL 1726217 at *20 n.43.  The record demonstrates that plaintiff worked as a telemarketer for well over three months (Tr. 151, 264).  Further, the ALJ properly viewed plaintiff's past telemarketing job to be substantial gainful activity, where the work activity involved significant physical or mental activities and was performed "for pay" (Tr. 264 (plaintiff received $350.00 a week as a telemarketer)).  20 C.F.R. § 416.972 (a), (b) (defining substantial gainful activity as "work activity that involves doing significant physical or mental activities" and is done "for pay or profit . . .").

In addition, in order to determine whether plaintiff could perform her past relevant work, the ALJ was required to make a specific and substantial inquiry into the relevant demands associated with that work and compare them to the RFC assessment. <u>Kerulo v. Apfel</u>, <u>supra</u>, 1999 WL 813350 at *8.  As indicated above, the ALJ obtained testimony from both plaintiff and a vocational expert regarding the demands of plaintiff's past job as a telemarketer and compared them to his RFC determination. Specifically, the ALJ inquired about the demands of plaintiff's past work, which plaintiff testified did not require lifting items, had been performed sitting down the "whole time" and

30

talking on a telephone (Tr. 39), and compared those functions to plaintiff's RFC, which the vocational expert testified were consistent with sedentary work (Tr. 53-56).

In determining that plaintiff could perform her past work, the ALJ rejected plaintiff's claims that her speech and writing impairments and her difficulty commuting prevented her from performing her past work as a telemarketer.  With respect to her allegations concerning speech and writing, SSA regulations expressly provide that "observations by our employees and other persons" will be treated as evidence.  20 C.F.R. § 416.929(c)(3) (June 13, 2011); see Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998).  The ALJ was, thus, permitted to rely on his own observation that plaintiff's speech and writing appeared fine, which were consistent with the reports of her own treating physician. With respect to plaintiff's concerns regarding her commute to her past job, the ALJ properly focused his analysis on whether plaintiff could perform her former type of work, as opposed to her specific past job.  See Tappan v. Halter, 10 F. App'x 30, 32 (2d Cir. 2001) (affirming Commissioner's denial of social security benefits where the claimant's "focus of his concern appeared to be the harmful effects of her two-hour round-trip commute to her job rather than the nature of the job of travel coordinator itself"); Jock v. Harris, supra, 651 F.2d at 135 (claimant must

31

show "that he is unable to return to his former type of work" and not a specific job (citation omitted)).  At this stage of the inquiry, the burden still remained with plaintiff to show that she could not perform the work of a telemarketer.  See Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003); Jock v. Harris, supra, 651 F.2d at 135; Shatraw v. Astrue, supra, 2008 WL 4517811 at *17.  In light of plaintiff's own testimony, the testimony of the vocational expert and the opinions of plaintiff's treating physician, the ALJ's determination that plaintiff failed to meet her burden and that plaintiff could return to telemarketing was supported by substantial evidence.

Having found that plaintiff could perform past relevant work, the ALJ appropriately concluded that plaintiff was not disabled from February 1, 2008 through the date of his decision (Tr. 15).  20 C.F.R. §§ 404.1520(f); 416.920(f).

IV. Conclusion

For the reasons set forth above, I find that the ALJ applied the correct legal standards and his decision was supported by substantial evidence.  Accordingly, I respectfully recommend that the Commissioner's motion for judgment on the pleadings be granted.

V.   <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Edgardo Ramos, United States District Judge, 40 Foley Square, Room 410, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Ramos.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir.

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Edgardo Ramos, United States District Judge, 40 Foley Square, Room 410, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Ramos.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:   New York, New York
         July 31, 2014

                                      Respectfully submitted,


                                      _____
                                      HENRY PITMAN
                                      United States Magistrate Judge

Copies mailed to:

Ms. Jennifer Bradley
Apt. 5D
2406 Lorrillard Place
Bronx, New York  10458

Susan D. Baird, Esq.
Southern District of New York
Assistant United States Attorney
3rd Floor
86 Chambers Street
New York, New York  10007

34